UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN HAMMLER,<br><br>                              Plaintiff,<br><br>v.<br><br>J. ALVAREZ *et al.*,<br><br>                              Defendants. | Case No.:  18-CV-326-AJB(WVG)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**[Doc. No. 19.]** |

Filed sixteen months after the alleged events in the First Amended Complaint transpired, this action involves the alleged use of excessive force when two correctional officers attempted to remove handcuffs from Plaintiff Hammler as he stood in his cell, passively resisting and refusing to comply with the officers' orders to produce his hands to be uncuffed.  This action also involves alleged retaliation against Hammler after he lodged complaints against the officers the next day.  Finally, Plaintiff also alleges a cell search by Defendants Barrientos and Hough was in retaliation for a prior, unrelated grievance that Plaintiff filed.  In response, Defendants move to dismiss the two-count complaint for failing to state facts upon which relief can be granted and on qualified immunity grounds.  This Court recommends that the excessive force claim be dismissed without leave to amend and

recommends a finding that Defendants Alvarez and Deis are entitled to qualified immunity as to this claim. As for the retaliation claim, this Court recommends dismissing the claim against all defendants with leave to amend but to delay ruling on qualified immunity until Plaintiff has amended the retaliation claim.

## I.   FACTUAL ALLEGATIONS[1]

On November 28, 2016, while incarcerated at the Richard J. Donovan Correctional Facility ("RJD"), Plaintiff was escorted back to his cell by Defendants Alvarez and Deis after being interviewed about an alleged assault that occurred two weeks earlier. (FAC, Doc. No. 1 at 3.)[2] While being escorted back to his cell, Plaintiff noticed that a "number of his legal books were jumbled into a pile on the floor in front of his cell amongst trash," and that some books were torn in half or visibly damaged. (*Id.*)

Plaintiff alleges he questioned Defendant Alvarez about why his cell had been searched. (*Id.* at 4.) Alvarez told Plaintiff they were looking for contraband. (*Id.*) After Alvarez placed Plaintiff in his cell and closed the door behind him, Plaintiff asked Alvarez to "[g]o get the lieutenant," referring to Lieutenant Piket. After Alvarez indicated he would not summon Lieutenant Piket, Plaintiff stated, "I [am not] giving up the cuffs until he comes over here." (*Id.*) Alvarez then took hold of the chain attached to the handcuffs that Defendant Deis had already been holding and told Plaintiff, "I'm giving you a direct order to put your hands out of the food-port." (*Id.* at 5.) Plaintiff refused to comply with the instructions and again demanded that Lieutenant Piket be called. (*Id.*)

---

[1] For purposes of Defendants' motion to dismiss, the facts below reflect the allegations in Plaintiff's First Amended Complaint ("FAC"). It should be noted that the Court previously construed the original Complaint as the FAC when Plaintiff dismissed Count Three. (Doc. Nos. 8, 15.) Accordingly, the Court will refer to the Complaint, as construed without Count Three, as the FAC.

[2] All citations to documents filed on the CM/ECF docket refer to the electronic page numbers generated by the CM/ECF system, not to the document's original pagination.

Defendant Alvarez then "began slowly pulling the chain" to pull Plaintiff's hands out of the food port. (*Id.*) Plaintiff urged Alvarez to stop pulling the chain and stated "I'm not resisting, and [will not] resist. Follow procedure." (*Id.*) Alvarez, aided by Deis, reached into the food port and took hold of the link to the handcuffs, "forcefully" pulling Plaintiff's hands through the food port. (*Id.* at 6.) Plaintiff alleges he began yelling "I'm no threat to anyone, I'm not resisting, stop pulling the chain," as Alvarez yelled "stop resisting," while pulling the chain. (*Id.*)

Plaintiff alleges that his left hand became caught in the food port during this process, causing him to scream. (*Id.*) Alvarez and Deis continued to pull the chain as Plaintiff yelled, "my hand is stuck." (*Id.*) Plaintiff attempted to set himself free, but Alvarez reached through the food port while holding the key and attempted to unlock the handcuffs on Plaintiff. (*Id.*) While trying to free his right hand, Plaintiff's left hand got in Alvarez's way, and Alvarez twice "jabbed" at Plaintiff's left hand and cut his hand. (*Id.* at 6-7.)

Defendant Alvarez ultimately successfully unlocked the handcuff on Plaintiff's right hand, and Plaintiff was able to unhitch his left hand from the food port. (*Id.* at 7.) Then, Plaintiff's handcuffed left hand was allegedly forced through the food port where Deis "grabbed hold of it and violently twisted it while Alvarez unlocked the cuff upon it." (*Id.*) After both hands were free from the handcuffs, Plaintiff pulled his hands into the cell, and Alvarez closed the food port. (*Id.*) Moments later, Plaintiff claimed to have chest pains and was taken to medical staff to be evaluated. (*Id.* at 8.) During a verbal exchange with Lieutenant Garcia at some point, Defendant Barrientos removed leg irons from Plaintiff. (*Id.*) Barrientos also issued Plaintiff a receipt for the confiscated legal books and a cell search slip. (*Id.* at 8-9.)

Plaintiff further alleges that he was issued a "Form 115 Rules Violation Report" ("RVR") on November 29, 2016 in which Deis falsified facts "attempting to cover up his and his co-Defendant's illegal use of force." (*Id.* at 12.) Plaintiff alleges this was in retaliation for his making a staff complaint against Alvarez and Deis. (*Id.*) Plaintiff also alleges that a similar incident occurred previously, on October 20, 2016, involving

Defendants Alvarez and Hough "and the illegal pulling of a chain," but Plaintiff did not receive an RVR after that incident. (*Id.*) Plaintiff alleges that Alvarez and Deis also falsified "crime/incident reports" dated November 28, 2016. (*Id.* at 13.) As a result of the RVR he received from this incident, Plaintiff was remanded to the Secured Housing Unit and the Psychiatric Services Unit in Sacramento. (*Id.*)

Based on the above allegations, Plaintiff asserts violations of his Eighth and First Amendment rights and seeks $350,000 in compensatory and punitive damages. (*Id.* at 16, 20.)

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Motion To Dismiss

Generally referred to as a motion to dismiss, Federal Rule of Civil Procedure 12(b)(6) permits a party to bring a motion arguing that a complaint "fail[s] to state a claim upon which relief can be granted." The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not due." *Twombly*, 550 U.S. at 555 (citation omitted).

"To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow . . . the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557). That is not to say that the claim must be probable, but there must be "more than a

4

sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in a complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

## B. Standards Applicable to *Pro Se* Litigants in Civil Rights Actions

Where, as here, the plaintiff appears *pro se* in a civil rights suit, the Court also must be careful to construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Garmon v. Cty of L.A.*, 828 F.3d 837, 846 (9th Cir. 2016). A *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend unless the complaint's deficiencies cannot be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (dismissal without leave to amend is not an abuse of discretion where amendment would be futile).

## III. DISCUSSION

## A. Claim One: Eighth Amendment Excessive Force

The primary basis for Plaintiff's excessive force claim is Officers Alvarez and Deis's alleged violation of the California Department of Corrections and Rehabilitation's ("CDCR") use of force policy that requires a "cool down" period and no immediate use of force when an officer is not confronted by an immediate threat. Plaintiff alleges he stood in his cell with the cell door closed between him and the officers while he refused to produce his handcuffed hands through the food port. He alleges the officers used a leash attached to the handcuffs and "slowly" began to pull his hands out through the food port to remove the handcuffs as he continued to yell at them while he remained noncompliant. At some point they also "forcefully" and "violently" pulled his hands. During the process, he allegedly sustained pain to his hand and marks on his hand from a handcuff keys. He

alleges all of this violated the CDCR's use of force policy and was thus a violation of the Eighth Amendment.

## 1. Legal Background: Eighth Amendment Excessive Force Claims

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citation omitted). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be "objectively, sufficiently serious," and (2) the prison official possesses a "sufficiently culpable state of mind." *Id.* at 834.

When prison officials are accused of using excessive force in violation of the Eighth Amendment, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam); *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (holding the Eighth Amendment excessive force standard "examines whether the use of physical force is more than *de minimis*."). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10. An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.* (internal quotations and citation omitted).

Moreover, when determining whether the force used was excessive, the court looks to the "extent of the injury suffered by an inmate . . . the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)) (internal quotation omitted). These factors may suggest "whether the use of force could plausibly

6

have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.*

### 2.    Alvarez and Deis

Even when viewed in the light most favorable to Plaintiff, the allegations in the FAC demonstrate that the minimal force Alvarez and Deis used was applied in a good-faith effort to maintain or restore order—not maliciously and sadistically to cause harm.  The facts also establish that Alvarez and Deis lacked the requisite state of mind for an excessive force claim.

### a.    The Use of Force Alleged Was Not Objectively Serious

Plaintiff's highly detailed allegations fail to make out any objectively serious use of force.  In the FAC, Plaintiff admits that he refused to comply with orders to place his hands through his cell door's food port so that Alvarez and Deis could remove his handcuffs. (Doc. No. 1 at 4-5 ("'He don't know ya'll tore up my legal books, and I'm not giving up the cuffs until he comes over here,' Plaintiff told Alvarez.").)  Plaintiff also admits that Alvarez taking hold of the chain attached to the handcuffs was in response to Plaintiff's refusal to comply.  (*Id.* at 5 ("It was at that time that Alvarez grabbed hold of the chain . . . that Deis had already been holding.").)  Plaintiff then admits that Alvarez gave him another chance to comply by issuing him him a direct order to do so.  (*Id.* ("[H]e told Plaintiff 'I'm giving you a direct order to put your hands out of the Food-Port . . . .").)  In response, Plaintiff admits he continued to refuse to comply.  (*Id.* ("'Go get the Lieutenant,' Plaintiff said refusing to put his hands out.").)  It was only after Plaintiff refused to comply a third time, (*id.* ("'I'm not putting my hands out, so call the Lieutenant.'"), that "Alvarez began to slowly pull[] the chain . . . ." (*id.*), pulled Plaintiff's hands out of the food port, and removed the handcuffs, (*id.* at 6-7).  As alleged, the slow pulling of chains attached to Plaintiff's hands soundly fails to meet the requirement of objectively serious use of force. Quite to the contrary, this force was objectively so trivial that it was nearly non-existent.

This level of force is precisely the type of non-actionable *de minimis* touching the Supreme Court described in *Hudson*.

The foregoing notwithstanding, Plaintiff makes additional allegations about the manner in which the officers removed his handcuffs after they were able to free one of Plaintiff's hands. After pulling the chain, Alvarez was able to hold Plaintiff's right hand, twisted it, and proceeded to attempt to remove the handcuffs. (Doc. No. 1 at 7 ¶ 11.) Once Alvarez removed the handcuff attached to Plaintiff's right wrist, Plaintiff turned around to face Alvarez and Deis with one hand free and the other hand still being held by Alvarez. (*Id.*) At that point, Alvarez "forcefully pulled" Plaintiff's still-handcuffed left hand through the food port where Deis "violently twisted" it as Alvarez unlocked the handcuff. (*Id.*) Once the officers successfully removed the second handcuff, Plaintiff pulled his hand into the cell, and the officers closed the food port door. (*Id.*) The FAC does not contain allegations of any additional use of force by anyone after this point. All of this transpired after Plaintiff "began yelling over and over" at the officers and used profanity in doing so. (*Id.* at 5 ¶¶ 6-7.)

Even accepting Plaintiff's allegations that the officers "forcefully pulled" and "violently twisted" his unhandcuffed wrist as true, he nonetheless fails to allege an objectively serious use of force. Rather, Plaintiff's allegations establish that the officers objectively used minimal and appropriate force to remove a handcuff from an uncooperative, high-security-level inmate who had turned his entire body to face them while that high-security-level inmate yelled at the officers and had an unrestrained hand available to use against them.

Plaintiff appears to believe that he was not resisting at all since he was not actively assaulting the officers. However, he fails to recognize that resistance is not "a binary state, with resistance being either completely passive or active. Rather, it runs the gamut from the purely passive protestor who simply refuses to stand, to the individual who is physically assaulting the officer." *Bryan v. MacPherson*, 630 F.3d 805, 830 (9th Cir. 2010). Here, passive non-compliance of the type Plaintiff admits he engaged in during this incident *is*

resistance, albeit passive resistance. *See Thomas v. Dillard*, 818 F.3d 864, 890 (9th Cir. 2016) ("Although Thomas resisted Dillard's commands to permit a frisk, by refusing to raise his hands and kneel, he did so 'passively' and not 'actively.'"); *see also Headwaters Forest Def. v. Cty. of Humboldt*, 276 F.3d 1125, 1130-31 (9th Cir. 2002) (finding that protestors, who were chained together with devices and refused to exit a building when ordered, passively resisted); *Forrester v. City of San Diego*, 25 F.3d 804, 805 (9th Cir. 1994) (characterizing as passive resistance protestors "remaining seated, refusing to move, and refusing to bear weight" despite police orders to the contrary). Based on Plaintiff's own allegations, he passively resisted the officers' efforts to remove the handcuffs from his wrists after they placed him in his cell. In response to his conduct, the officers simply pulled his hand through the food port, turned his hand, and removed the remaining handcuff attached to his wrist. There can be no doubt that pulling Plaintiff's hand through the food port and turning his wrist to insert a tiny key into a tiny hole on a handcuff under these circumstances was not an objectively serious use of force. Plaintiff's allegations thus establish only that Officers Alvarez and Deis used an objectively trivial level of force in response to Plaintiff's passive resistance. *Cf. Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003) (where an arrestee was passively resisting and the need for force was minimal, "it was objectively unreasonable and a violation of the Fourth Amendment for [the agent] to grab [Plaintiff] by the arms, throw her to the ground, and twist her arms while handcuffing her."). Accordingly, these additional allegations also fail to make out an objectively serious use of force.

This conclusion is further buttressed by the lack of any injury to Plaintiff. During the uncuffing process, Plaintiff alleges that he "suffered injuries to the hands consisting of a stab wound, cuts, swelling, bruising, [and] nerve damage." (Doc. No. 1 at 10.) However, these allegations are squarely contradicted by medical documentation attached to the FAC.[3]

---

[3] In deciding a motion to dismiss under Rule 12(b)(6), the Court also may consider documents attached to a complaint. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994);

Medical personnel examined Plaintiff immediately after the incident and reported Plaintiff sustained no physical injuries whatsoever.[4] (Ex. D to FAC, Doc. No. 1 at 57.) The only injury was Plaintiff's self-reported complaint that he could not "feel" his hands and fingers. (*Id.*) Had he also sustained a stab wound, cuts, swelling, and bruising, the medical report would have included these observations just as it included his self-serving statement. If Plaintiff had actually sustained any visible physical injuries, he would have self-reported them to medical personnel who in turn would have noted the injuries alongside Plaintiff's other documented statements. Because an exhibit to the FAC squarely contradicts Plaintiff's claimed injuries, the Court is not required to credit his injury allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), amended by 275 F.3d 1187 (2001) (a plaintiff can "plead himself out of a claim by including . . . details contrary to his claims."). The lack of any injury to Plaintiff serves to further support the non-serious nature of the force the officers used to remove the handcuffs from his wrists.

However, even assuming the injuries Plaintiff alleges did exist, they are trivial, minor, and not the type of injury consistent with an excessive level of force. Thus, even if the alleged injury existed, such minor injury would be consistent with a trivial use of force, would support the trivial nature of force used, and would not support an inference or finding of an objectively serious use of force.

Plaintiff fails to satisfy the first element of an Eighth Amendment excessive force claim.

---

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989) (as amended).

[4] However, both Alvarez and Deis suffered physical injuries to their hands. (Ex. D, Doc. No. 1 at 58-59.)

### b. Plaintiff Fails to Allege That Alvarez and Deis Possessed a Sufficiently Culpable State of Mind.

Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis, and citations omitted). For excessive force claims, "[f]orce does not amount to a constitutional violation . . . if it is applied in a good faith effort to restore discipline and order and not 'maliciously and sadistically for the very purpose of causing harm.'" *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)); *see also Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Under this standard, courts "look for malicious and sadistic force, not merely objectively unreasonable force." *Clement*, 298 F.3d at 903.

Here, Plaintiff's highly-detailed, comprehensive allegations fail to allege that Alvarez and Deis had the requisite culpable state of mind. The force these officers used was not objectively unreasonable much less malicious and sadistic. To the contrary, his allegations conclusively establish that the officers' sole purpose in using a trivial amount of force against him was to remove the handcuffs from his wrists. In other words, Plaintiff establishes only that the officers' actions were a good faith effort to restore discipline and order. The trivial level of force they employed was in response to Plaintiff's noncompliance with their directive to produce his hands for handcuff removal. Once the officers were able to successfully remove the handcuffs, the encounter ended and no further force was applied once discipline was restored. Ultimately, the allegations establish that the force used was trivial, in direct response to Plaintiff's resistance and non-compliance, was applied for that sole purpose, and ended when discipline was restored. *Accord Beard v. Kimble*, No. 08CV137-CAS, 2015 U.S. Dist. LEXIS 102848, at *13-14 (E.D. Cal. Aug. 5, 2015) (granting motion to dismiss claim of excessive force alleging that inmate was pepper-sprayed after he failed to comply with the officer's order to return to his cell and told the officer he "was not going to go anywhere until after [the officers] contacted a

sergeant" about receiving his medication and a cell transfer, because the force was used to maintain discipline, rather than maliciously to cause harm). Not only has Plaintiff failed to plead the officers' had the requisite state of mind, he actually has affirmatively established they did not act maliciously or sadistically for the purpose of causing him harm. Accordingly, Plaintiff has also failed to make out the second element of an Eighth Amendment excessive force claim.

### c. Violation of Prison Policy or Regulation is Not a Basis For a Constitutional Violation

Plaintiff appears to heavily rely on the alleged violation of the CDCR's use of force policy as the basis for his Eighth Amendment claim. To the extent he does so, the reliance on a prison policy violation is not a viable basis for an Eighth Amendment constitutional claim against these officers. Plaintiff has not alleged how Alvarez and Deis—in their individual, non-supervisory capacities—violated the Eighth Amendment when they did not follow the CDCR's use of force policy by applying force instead of waiting. Nor can he do so because the failure to comply with a prison policy, without more, is not sufficient to state a constitutional violation claim.[5] *See Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990) (violation of state law does not give rise to a constitutional violation); *see also Edwards v. Johnson*, 209 F.3d 772, 779 (5th Cir. 2000) ("[A] violation of prison regulations in itself is not a constitutional violation."); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4

---

[5] To be sure, policy-based constitutional violations may exist outside the context of this case where a supervisor "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). However, Plaintiff does not make such allegations against Alvarez and Deis in their capacity as supervisors of other officers. A policy-based violation may also be brought against a government entity if a plaintiff's injuries occurred as a result of an official police or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, Plaintiff has no qualms with the use-of-force policy itself but instead contends the officers failed to follow that policy. These policy-based grounds for Eighth Amendment claims simply do not apply to this case.

(10th Cir. 1993) (failure to adhere to administrative regulations does not equate to a constitutional violation); *Riccio v. Cty of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that state's failure to abide by its own procedural regulations is not a federal due process issue); *Robinson v. Leonard*, No. 3:14-CV-1905 RM, 2016 U.S. Dist. LEXIS 14683, at *5 (N.D. Ind. Feb. 8, 2016) ("The violation of a State prison policy isn't a basis for a federal constitutional lawsuit."); *Sims v. Ulit*, 2012 U.S. Dist. LEXIS 11068, 2012 WL 293298 at *8 (E.D. Cal. Jan. 31, 2012) ("[A] prison official's mere violation of a prison regulation" does not constitute a constitutional violation). Thus, Plaintiff must show more than a violation of policy—namely, he must show the elements of the Eighth Amendment claim discussed above. However, as explained in the sections above, Plaintiff fails to allege anything beyond a non-actionable failure to follow a prison policy. Thus to the extent his claim rests on the violation of the use-of-force policy, his Eighth Amendment claim fails.

### d. Plaintiff's Heavy Reliance on *Coleman* is Misguided

To state a claim for excessive force, Plaintiff relies on a "fact sheet" regarding a court decree in *Coleman v. Brown*, No. 90-CV-520-KJM-DB (E.D. Cal), a class action in the Eastern District in which plaintiffs challenged the alleged discriminatory use of force on seriously mentally ill inmates in California prisons. *See Coleman v. Wilson*, 912 F. Supp. 1282, 1293 (E.D. Cal. 1995). However, a violation of the consent decree in the *Coleman* class action is insufficient to state a claim for excessive force.

In the *Coleman* action, the issue of the use of disciplinary and behavioral control measures on mentally ill inmates, related to use of excessive force, disciplinary measures, and housing of class members in administrative segregation and segregated housing units was adjudicated, resulting in a court decree and remedial plan on the claims for injunctive and declaratory relief. *See Bennett v. Asuncion*, No. 16CV1749-AWI-MJS(PC), 2018 U.S. Dist LEXIS 45714, at *16-18 (E.D. Cal. Mar. 20, 2018) (discussing history of *Coleman* class action). However, any conclusion that the use of force at issue was improper by the order on the consent decree, in and of itself, does not provide Plaintiff with an independent cause of action under section 1983 because the order does not have the effect of creating

or expanding Plaintiff's constitutional rights.  *See Cagle v. Sutherland*, 334 F.3d 980, 986-87 (11th Cir. 2003) (consent decrees often go beyond constitutional minimum requirements and do not create or expand rights); *see also Green v. McKaskle*, 788 F.2d 1116, 1123 (5th Cir. 1986) (remedial decrees remedy constitutional violations but do not create or enlarge constitutional rights and do not serve as a substantive basis for damages); *Hackett v. Toor*, No. 15CV670-DAD-BAM(PC), 2018 U.S. Dist. LEXIS 9913, at *18-19 (E.D. Cal. Jan. 22, 2018).

Ultimately, Plaintiff cannot seek relief here based on violations of the court order in the *Coleman* class action.  *Accord Espinoza v. Saldivar*, No. 15CV812-DAD-SAB(PC), 2016 U.S. Dist. LEXIS 170298, at *7 (E.D. Cal. Dec. 7, 2016) ("Plaintiff's claim is not cognizable by way of section 1983.  It is well-settled that the remedial orders issued in *Coleman* and *Plata* do not provide an independent cause of action under section 1983, as the orders do not create or expand on a plaintiff's constitutional rights."); *Bey v. City of Oakland*, No. 14CV1626-JSC, 2014 U.S. Dist. LEXIS 175101, at *18 (N.D. Cal. Dec. 18, 2014) ("[T]o the extent that Plaintiffs are attempting to base these counts on the violation of provisions in [the consent decree from *Allen v. City of Oakland*, No. 00-4599-TEH], such a court ordered agreement or consent decree does not provide Plaintiffs with an independent claim for relief.").  To the extent Plaintiff relies on *Coleman*, he is misguided.

### 3.    Defendants Barrientos and Hough

Although Plaintiff contends it is obvious that the excessive force claim is lodged against only Alvarez and Deis (Doc. No. 29 at 4-5), the FAC does not specifically delineate against whom this claim is brought.  In response to Defendants' motion to dismiss the excessive force claim against Barrientos and Hough, Plaintiff concedes that this claim is brought against only Alvarez and Deis, and only the retaliation claim is brought against Barrientos and Hough.  (*Id.*)  In light of this concession—and given that there are no allegations of force used by Barrientos and Hough—this Court recommends that the excessive force claim be dismissed with prejudice to the extent it names Barrientos and Hough.

## B. Claim Two: Retaliation for Protected First Amendment Activity

### 1. Legal Background: First Amendment Retaliation Claims

Allegations of retaliation against a prisoner's First Amendment right to file a prison grievance may support a 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995); *Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989).

A retaliation claim has five elements. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). First, Plaintiff must allege that the retaliated-against conduct is protected. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).[6] Second, Plaintiff must allege Defendants took adverse action against him.[7] *Rhodes*, 408 F.3d at 567. Third, Plaintiff must allege a causal connection between the adverse action and the protected conduct.[8] *Watison*, 668 F.3d at 1114. Fourth, Plaintiff must allege the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568 (internal quotation marks and emphasis omitted).[9] Fifth, Plaintiff must

---

[6] The filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).

[7] The adverse action need not be an independent constitutional violation. *Pratt*, 65 F.3d at 806. "[T]he mere *threat* of harm can be an adverse action . . . ." *Brodheim*, 584 F.3d at 1270 (emphasis in original).

[8] Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. *Watison*, 668 F.3d at 1114 (citing *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.")).

[9] "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Rhodes*, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill Plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. *Rhodes*, 408 F.3d at 569.

allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution . . . ." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114-15.

## 2. Deis

### a. Deis's Issuing of a Rules Violation Report

The retaliation claim mainly focuses on Deis issuing Plaintiff a Rules Violation Report ("RVR") the day after the use-of-force incident. (Doc. No. 1 at 12-13.) Plaintiff claims Deis issued this RVR the same day Plaintiff filed a grievance against Alvarez and Deis for the previous day's use of force against him.[10] (*Id.* at 12 ¶ 20.)

The claim against Deis based on the RVR fails for the fundamental reason that there is no allegation that Deis ever knew that Plaintiff filed a grievance against him and Alvarez. Plaintiff simply asserts Deis issued the RVR "in retaliation for exercising the right" to file a grievance. But nothing in the complaint suggests that Deis knew that Plaintiff had filed the grievance. Without such an allegation, there cannot be a causal connection between the RVR and the grievance. Because Plaintiff alleges no facts to show that Deis had any prior knowledge of this grievance, there are no facts to suggest that Deis issued the RVR in retaliation for the filing of a grievance. *Accord Pratt v. Rowland*, 65 F.3d 802, 807-09 (9th Cir. 1995) ("Most importantly, there is insufficient evidence to support the district court's finding that . . . DOC officials who were involved in the transfer decision were actually aware of the . . . interview.").

Nor does Plaintiff alleging that the RVR issued on the same day as the grievance save the day. Mere allegations of timing—without more—are not sufficient to satisfy this element. *Pratt v. Rowland*, 65 F.3d 802, 807-08 (9th Cir. 1995) (the timing of adverse actions alone is insufficient to establish retaliatory intent); *O'Brien v. Gularte*, No.

---

[10] Despite Plaintiff's allegation that he filed a grievance on November 29, 2016, the only grievance record attached to the FAC in reference to the use-of-force incident is one filed on December 28, 2016—a full month after the incident. (Ex. F-3/F-4 to FAC, Doc. No. 1 at 68-69.)

18CV980-BAS-MDD, 2019 U.S. Dist. LEXIS 489, at \*9 (S.D. Cal. Jan. 2, 2019) ("Timing alone . . . is generally not enough to support an inference that prison officials took an adverse action against a prisoner in retaliation for the prisoner's participation in protected conduct."). "[R]ather, Plaintiff must allege sufficient facts to plausibly suggest a nexus between" the alleged protected activity and the adverse action taken by a defendant. *Rojo v. Paramo*, No. 13CV2237-LAB(BGS), 2014 U.S. Dist. LEXIS 80156, 2014 WL 2586904, at \*5 (S.D. Cal. June 10, 2014). Plaintiff, however, relies solely on timing and nothing more. Accordingly, besides the timing of the two events, there is nothing that supports the inference of retaliatory motive by Deis when he issued the RVR. *Accord Castaneda v. CDCR*, No. 18CV1018-LAB(BGS), 2019 U.S. Dist. LEXIS 1201, at \*11-12 (S.D. Cal. Jan. 2, 2019).

### b.    Deis's Alleged Selective Enforcement of Rules

The retaliation claim also mentions that Deis issuing the RVR discussed above constituted selective enforcement of prison rules and was meant to retaliate against Plaintiff for the November 29, 2016 grievance. (*Id.* at 12 ¶ 21.) Two weeks before the underlying events here, Plaintiff apparently refused to produce his hands for handcuffing, but Plaintiff was never issued an RVR for his conduct in that incident. Ostensibly, Plaintiff alleges that Deis chose to issue the RVR this time in order to retaliate against him for filing the grievance earlier in the day. The retaliation claim based on this selective enforcement theory fails for three reasons.

First, the retaliation claim based on this selective enforcement theory fails for the fundamental reason that there is no indication whatsoever that Deis *knew* about the prior incident that involved *Alvarez and Hough*—not Deis—and there are no facts from which the Court can make such an inference. Because Plaintiff alleges nothing to show that Deis had any knowledge of this previous incident involving two other officers, there are no facts to suggest that the RVR he issued was issued in response to the filing of any grievances. *Accord Pratt v. Rowland*, 65 F.3d 802, 807-09 (9th Cir. 1995) ("Most importantly, there is insufficient evidence to support the district court's finding that . . . DOC officials who were

involved in the transfer decision were actually aware of the . . . interview.").  Nor is there any basis to believe that Deis issuing this RVR was selective enforcement at all since there are no allegations of prior incidents where *Deis* did not issue an RVR for similar misconduct by Plaintiff or any other inmate.

Second, Plaintiff fails to allege that Deis's RVR caused him to be "chilled" from seeking to engage in "First Amendment activities." *Rhodes*, 408 F.3d at 568.  Although Plaintiff need not actually be chilled, *Brodheim*, 584 F.3d at 1269, he must at the very least allege a chilling effect to satisfy this element of the retaliation claim.  However, he has not met even this low standard.

Finally, Plaintiff has not alleged any facts sufficient to show that Deis's RVR did not reasonably advance a legitimate correctional goal. *Pratt*, 65 F.3d at 807-09 (explaining that a prisoner must show that there were no legitimate correctional purposes for conduct alleged to be retaliatory).

Because leave to amend may not be futile based on the deficiencies identified immediately above, the retaliation claim against Deis should be dismissed with leave to amend.

### 3. Alvarez and Deis

Another basis for the retaliation claim against Alvarez and Deis is their alleged fabrication of reports they wrote to document the use of force against Plaintiff.  He claims these officers "falsified separate crime/incident reports . . . to further their endeavor to cover up their unconstitutional treatment of Plaintiff and to ensure that Plaintiff be found guilty of the RVR and false facts therein."  This theory also fails for several reasons.

First, based on the chronology in the FAC, the alleged falsified reports could not have been written to bolster the RVR in retaliation for Plaintiff's filing of a grievance against Alvarez and Deis.  Alvarez and Deis wrote the alleged false reports on November 28, 2018, and their supervisors approved the reports on the same day.  (Doc. No. 1 at 13 ¶ 22; Exs. D-9 & D-11 to FAC, Doc. No. 1 at 53, 55.)  However, Plaintiff did not file the

grievance against Alvarez and Deis for the November 28 incident until the next day.[11] (Doc. No. 1 at 12 ¶ 19.) Moreover, Deis did not issue the RVR until November 29. (Ex. C-1 to FAC, Doc. No. 1 at 34.) Thus to the extent Plaintiff believes the alleged falsified reports were written to retaliate against the grievance he filed, the chronology of events makes such a causal connection impossible—Alvarez and Deis could not have written the reports in retaliation for a grievance that had not yet been filed against them. Thus, this portion of the retaliation claim fails for the fundamental reason that a causal connection between the protected activity and the alleged retaliation could not have existed.

Second, Plaintiff does not allege that the officers knew when they wrote their reports that he was going to file a grievance against them the next day. If the officers did not know that a grievance was forthcoming the next day, there could not possibly have been a causal connection between the protected conduct of filing the grievance and the alleged retaliatory conduct of writing false reports. This constitutes a second failing of the causal connection between the protected conduct and the alleged retaliatory conduct. Indeed, given that the officers wrote their reports the day before Plaintiff filed the grievance against them, the only inference the Court can draw from the current allegations in the FAC is that they did *not* know about the grievance and that there was accordingly *no* causal connection between the reports and the grievance.

Finally, Plaintiff fails to allege that Alvarez and Deis's allegedly false reports caused him to be "chilled" from seeking to engage in "First Amendment activities." *Rhodes*, 408 F.3d at 568. Although Plaintiff need not actually be chilled, *Brodheim*, 584 F.3d at 1269, he must at the very least allege a chilling effect to satisfy this element of the retaliation claim. However, he has not met even this low standard.

---

[11] The Court notes again that there is plausible indication that Plaintiff actually filed the grievance a month after the incident, not the next day. (Ex. F-3/F-4 to FAC, Doc. No. 1 at 68-69.)

Because leave to amend may not be futile based on the deficiencies identified immediately above, the retaliation claim against Alvarez and Deis should be dismissed with leave to amend.

### 4. Barrientos and Hough

In his opposition to the motion to dismiss, Plaintiff asserts that the only claim against Barrientos and Hough is Claim 2 for retaliation. (*See* Doc. No. 29 at 5.) The body of Claim 2 does not mention Plaintiff's assertion that the FAC alleges Barrientos and Hough were the officers who destroyed his legal books while he was being interviewed. However, a prison grievance filed a month after these events named Barrientos and Hough as the cell searchers. (Ex. F-3 to FAC, Doc. No. 1 at 68-69.) The totality of Plaintiff's retaliation claim against these officers is that they searched his cell while he was being interviewed about an unrelated grievance he had previously filed.[12] These allegations against Barrientos and Hough are deficient for three reasons.

First, plaintiff fails to allege any causal connection between the cell search and the grievance he had filed and about which he was being interviewed. Because Plaintiff alleges no facts to show that Barrientos and Hough had any knowledge of this previous grievance, there are no facts to suggest that the cell search was conducted in retaliation for the filing of any grievance. *Accord Pratt v. Rowland*, 65 F.3d 802, 807-09 (9th Cir. 1995) ("Most importantly, there is insufficient evidence to support the district court's finding that . . .

---

[12] It appears Defendants may have misread Claim Two to include allegations against Alvarez and Hough. Their mention in Claim Two was to provide context to Deis's alleged selective enforcement of rules. According to Plaintiff, Alvarez and Hough did not previously issue Plaintiff a rules violation on October 22, 2016 for the same resistive conduct he exhibited in this case and for which Deis issued an RVR. These allegations are not intended to advance a retaliation claim against Hough or Alvarez. The retaliation claim against Barrientos and Hough is based solely on their alleged search of Plaintiff's cell while he was being interviewed (*see* Doc. No. 1 at 68-69; Doc. No. 29 at 5)—a theory that Defendants do not address.

DOC officials who were involved in the transfer decision were actually aware of the . . . interview."). Plaintiff simply asserts the cell search was conducted while he was being interviewed in an office. But nothing in the complaint suggests that Hough or Barrientos knew that an interview was taking place, the purpose of the interview, or even where Plaintiff was at the time.[13] Accordingly, besides the timing of the interview and cell search, there is nothing to support the inference of retaliatory motive by Barrientos or Hough. *Accord Castaneda v. CDCR*, No. 18CV1018-LAB(BGS), 2019 U.S. Dist. LEXIS 1201, at *11-12 (S.D. Cal. Jan. 2, 2019).

Second, as discussed above, Plaintiff fails to allege that the actions of any of these Defendants caused him to be chilled from seeking to engage in First Amendment activities.

Finally, as explained above, Plaintiff has not alleged any facts sufficient to show that the cell search allegedly conducted by Barrientos and Hough did not reasonably advance a legitimate correctional goal.

Based on the threadbare allegations against Barrientos and Hough, the FAC fails to state a retaliation claim against either of these defendants. However, leave to amend may not be futile based on the deficiencies identified immediately above. Accordingly, the retaliation claim against Barrientos and Hough should be dismissed with leave to amend.

---

[13] Plaintiff argues in his opposition that the timing of the cell search in relation to the grievance interview sufficiently alleges a causal connection between the two. (Doc. No. 29 at 6.) As an initial matter, the FAC contains no allegations about the timing of the two events and their causal connection. And in any event, mere allegations of timing—without more—are not sufficient to satisfy this element. *Pratt*, 65 F.3d at 807-08 (the timing of adverse actions alone is insufficient to establish retaliatory intent); *O'Brien v. Gularte*, No. 18CV980-BAS-MDD, 2019 U.S. Dist. LEXIS 489, at *9 (S.D. Cal. Jan. 2, 2019) ("Timing alone . . . is generally not enough to support an inference that prison officials took an adverse action against a prisoner in retaliation for the prisoner's participation in protected conduct."). "[R]ather, Plaintiff must allege sufficient facts to plausibly suggest a nexus between" the alleged protected activity and the adverse action taken by a defendant. *Rojo v. Paramo*, No. 13CV2237-LAB(BGS), 2014 U.S. Dist. LEXIS 80156, 2014 WL 2586904, at *5 (S.D. Cal. June 10, 2014). Here, Plaintiff relies solely on timing and nothing more.

## C.    Qualified Immunity

### 1.    Legal Standard

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).  In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth two questions to be considered in determining whether qualified immunity exists.  First, the Court considers the threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201.  Second, if a constitutional right was found to be violated, the next step is to ask whether the right was clearly established.  *Id.*

"Even in the context of clearly established law, '[i]f the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense.'" *Galvin v. Hay*, 374 F.3d 739, 745 (9th Cir. 2004) (citing *Saucier v. Katz*, 533 U.S. 194, 205 (2001)).  Accordingly, "the qualified immunity defense . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Although the order of this analysis may be determined by the Court, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), Plaintiff must answer both inquiries in the *affirmative* to defeat qualified immunity, *Davis v. City of Las Vegas*, 478 F.3d 1048, 1053 (9th Cir. 2007).

### 2.    Excessive Force Claim Against Alvarez an Deis

#### a.    Plaintiff Has Not Alleged a Violation of a Constitutional Right

Although the Eight Amendment grants individuals the right to be free from excessive force, Plaintiff has failed to allege that Alvarez and Deis violated that right.  To the contrary, as explained above, the allegations in the FAC establish that the officers did not

18-CV-326-AJB(WVG)

use excessive force. Accordingly, Plaintiff has not alleged the violation of a constitutional right and cannot do so based on the allegations in his own complaint.

### b. Plaintiff Fails to Allege a Clearly Established Right

Additionally, even if the trivial level of measured force Alvarez and Deis employed here was a violation of the Eighth Amendment, the officers would nonetheless be entitled to qualified immunity because the right to be free from such trivial force under the circumstances of this case is not clearly established.

Plaintiff bears the burden of demonstrating that the right at issue here was clearly established. *Kramer v. Cullinan*, 878 F.3d 1156, 1164 (9th Cir. 2018); *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011). To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The level of generality at which the "right" alleged to be violated is considered must not be too high and divorced from the specific conduct at issue. *Anderson*, 483 at 639-40; *al-Kidd*, 563 U.S. at 742 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."). The dispositive inquiry is "whether the violative nature of particular conduct is clearly established" and it must be examined "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. ___, 136 S. Ct. 305, 308 (2015). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741; *see also Ziglar v. Abbasi*, 582 U.S. ___, 137 S. Ct. 1843, 1867 (2017) ("[A]n officer might lose qualified immunity even if there is no reported case directly on point . . . [b]ut in the light of pre-existing law, the unlawfulness of the officer's conduct must be apparent.") (internal citations omitted).

18-CV-326-AJB(WVG)

Here, no case law holds unconstitutional the use of such trivial force to gain compliance from a passively-resisting prisoner to remove handcuffs.[14]  No reasonable officer, faced with Plaintiff's non-compliance, passive resistance, and yelling could have believed that pulling Plaintiff's hands through the food port to remove handcuffs would violate any constitutional right.  Accordingly, Plaintiff has not alleged a clearly established right under existing law such that any reasonable official would have understood that what he was doing violated that right.  This is particularly true when the use of force ends once the officers achieve their sole objective of removing the handcuffs.

In sum, the Court recommends that Defendants Alvarez and Deis should be found entitled to qualified immunity as to Plaintiff's Eighth Amendment excessive force claim. The Court can so find based on either of the two independent reasons above.

### 3. Retaliation Claim

With respect to the retaliation claim, because this Court recommends granting Plaintiff leave to amend as to all four defendants and has provided Plaintiff the required notice of defects, it would be premature at this early stage to recommend granting or denying Defendants' qualified immunity defenses on the merits.  Accordingly, this Court recommends that this portion of the motion to dismiss be denied without prejudice subject to full consideration at a later date and on a more developed record.  *Accord Victoria v. City of San Diego*, 326 F. Supp. 3d 1003, 1019 (S.D. Cal. 2018) (finding insufficient basis at pleadings stage to rule on qualified immunity claims) (Battaglia, J.); *Canales v. City of Calexico*, No. 17CV695-AJB(JLB), 2017 U.S. Dist. LEXIS 202644, at *7-9 (S.D. Cal. Dec. 8, 2017) (same); *George v. Uribe*, No. 11-CV-70-JLS(RBB), 2012 U.S. Dist. LEXIS 40224, at *20-21 (S.D. Cal. Mar. 23, 2012) (finding the qualified immunity defense premature until, and if, the plaintiff could amend his complaint to successfully state a claim).

---

[14] Plaintiff has not directed this Court to any case that so holds.

# IV. CONCLUSION

Based on the foregoing, this Court RECOMMENDS that Defendants' motion to dismiss be GRANTED and that:

1. Claim One for excessive force against all four defendants be DISMISSED WITHOUT LEAVE TO AMEND; and

2. Claim Two for retaliation against all four defendants be DISMISSED WITH LEAVE TO AMEND.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

Additionally, **IT IS ORDERED:**

1. That **no later than February 22, 2019**, any party to this action may file written objection with the Court and serve a copy on all parties. Given the extensive extensions the Court has granted Plaintiff and the delay that has caused, the parties should not expect that any further extensions will be granted.

2. **The objection shall be no more than 15 pages in length** and shall be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the specific time may waive to raise those objections on the appeal. **No reply briefs in response to the Objections will be accepted.**

3. Plaintiff need not make any copies of his Objections and should mail the original of his Objections directly to the Court.

4. Plaintiff is also excused from serving a copy upon Defendants. Service upon Defendants shall be deemed completed upon transmission of the Notice of Electronic Filing issued by the CM/ECF system.

5. The Attorney General's Office shall request that a litigation coordinator be assigned to Plaintiff for the timely filing of any Objections.

6. The Attorney General's Office shall cause personal delivery of a hard copy of this R&R by the litigation coordinator within 1 business day of filing.

7. On **February 14, 2019**, the Attorney General's Office shall file a status report regarding its compliance with these mandates.

**IT IS SO ORDERED.**

DATED: February 4, 2019

_____

Hon. William V. Gallo
United States Magistrate Judge

18-CV-326-AJB(WVG)