UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN HAMMLER,<br><br>                       Plaintiff,<br>v.<br>J. ALVAREZ *et al.*,<br><br>                      Defendants. | Case No.: 18-CV-326-AJB(WVG)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO REVOKE PLAINTIFF'S IFP STATUS, TO REQUIRE POSTING OF SECURITY, AND TO DECLARE PLAINTIFF A VEXATIOUS LITIGANT**<br><br>**[Doc. No. 20.]** |

      A self-described "jailhouse lawyer," Plaintiff has filed numerous lawsuits against prison officials in every federal district court in California. Defendants now move (1) for an Order revoking Plaintiff's *in forma pauperis* status and dismissing the case, (2) for an Order requiring Plaintiff to post $15,525 in security under Local Civil Rule 65.1.2(a) to proceed with this case, and (3) declaration of Plaintiff as a vexatious litigant who should be subject to a prefiling order. This Court recommends that Defendants' motion be DENIED as to the first two requests and GRANTED as to the last request.[1]

---

[1] For a recitation of allegations in the FAC, please see the recently-filed R&R on Defendants' motion to dismiss. (Doc. No. 53; 2019 U.S. Dist. LEXIS 17720, 2019 WL 422575 (S.D. Cal. Feb. 4, 2019).

1

A.  **Defendants' Motion to Revoke Plaintiff's IFP Status and Dismiss this Case**

On April 25, 2018, the Court granted Plaintiff leave to proceed *in forma pauperis* after he filed a declaration attesting that he had not received any form of income in the previous twelve months. (Doc. Nos. 3, 5.) Plaintiff also submitted a certified copy of his prisoner trust account that showed his account "carried no average monthly balance, has had no monthly deposits to his account over the 6-month period immediately preceding the filing of his Complaint, and, consequently, had no available balance on the books at the time of filing." (Doc. No. 5 at 3:16-18.) The Court found Plaintiff had no means to pay the initial filing fee and directed the CDCR to collect the remaining $350 in fees from Plaintiff on an installment basis. (*Id.* at 3-4.)

Defendants contend Plaintiff's IFP declaration was false because he had in fact received $10,900 from settlements in two lawsuits during that time period. Moreover, Plaintiff reportedly received another $4,000 from a settlement months after he filed the IFP application in this case. Defendants now ask the Court to revoke Plaintiff's IFP status and dismiss the case for abuse of the IFP process.

1.  **Legal Background**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee. *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). However, a prisoner granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

If, at any time, the Court determines that a Plaintiff's "allegation of poverty is untrue, the Court "shall dismiss the case." 28 U.S.C. § 1915(e)(2)(A).

## 2. The Court Should Not Revoke Plaintiff's IFP Status

Based on the documentary evidence, it certainly appears that Plaintiff's representation that he had not received any income was technically not correct, as two settlement checks had been issued to him in the recent months prior to filing the IFP application on February 26, 2018 (Doc. No. 3). On August 29, 2017, he received a net amount of $476.16 (Doc. No. 20-1 at 2 ¶ 5(a)), and he received another $9,889.81 in net settlement funds on October 18, 2017 (*id.* at 3 ¶ 5(b)). (Doc. No. 20-1 at 6.) However, on the same day these funds were applied to Plaintiff's account, the CDCR withdrew identical amounts and applied those funds to the restitution Plaintiff had been ordered to pay in other cases. (Doc. No. 20-1 at 6.) The net result of each of these transactions was to completely remove the incoming funds from Plaintiff's account, leaving him with $0.00 balances each time. (*Id.*)

Based on the foregoing, the omission of this income from Plaintiff's FIP declaration was of no moment because it would not have affected the Court's ultimate decision.[2] On the day Plaintiff filed his IFP application, he completely lacked funds from the two settlements to apply towards filing fees in this case. Thus, the Court's finding in its IFP Order that Plaintiff had no means to pay the filing fees would have remained the same since the certified prisoner trust account statement Plaintiff submitted showed he lacked funds as of the date of the IFP application. Accordingly, Plaintiff's "allegation of poverty" was not "untrue" such that revocation of his IFP status or dismissal is warranted here. *See* 28 U.S.C. § 1915(e)(2)(A).

Nor does Defendants' representation that Plaintiff received a subsequent $4,000 settlement change the above assessment. As an initial matter, the Court notes that there is no evidence that Plaintiff has received these funds. While Defendants submitted records

---

[2] Plaintiff has also advanced a colorable argument that the funds never hit his prison account because CDCR headquarters withdrew the funds before anything was transmitted to his local prison account.

showing intake of the two settlement funds that preceded the IFP application, they did not submit anything related to the $4,000 settlement, and Ms. Gomez-Essex's declaration does not discuss these funds. However, even if Defendants submit these records along with any objection to this R&R, the Court still would not recommend dismissal under section 1915(e)(2)(A). If Plaintiff is shown to *currently* have funds to pay filing fees, his IFP application declaration nonetheless demonstrated that he was not able to pay any fees as of the date he filed it. Accordingly, any subsequent funds he received would not retroactively render his IFP declaration untrue since he indeed was a pauper as of the date of that filing.

In sum, this Court does not recommend revocation of Plaintiff's IFP status since there is no evidence that Plaintiff currently has the means to pay any fees. Nor would this Court recommend dismissing this matter under section 1915(e)(2)(A) since Plaintiff had no funds available to pay fees as of the date of his IFP application.

**B.    Whether Plaintiff Should Be Required to Post Security Before Proceeding in This Action**

Defendants also request that Plaintiffs be required to post $15,525 as security for their costs in litigating this action.

**1.    Legal Background**

The Federal Rules of Civil Procedure do not contain a provision relating to security for costs. *Simulnet E. Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994). The Southern District of California's Civil Local Rule 65.1.2(a) permits the Court to order a party "to furnish security for costs which may be awarded against such party in an amount and on such terms as are appropriate." S.D. Cal. Civ. L.R. 65.1.2(a). In establishing the requirements for a costs bond, the Court may look to the law of the forum state. *Simulnet E. Assocs.*, 37 F.3d at 574. However, "[a]lthough district courts often look to state practice to determine whether it is appropriate to require plaintiff to post a security, there is no requirement for federal courts to do so." *Surabhi v. Miller*, No. 15CV1830-WQH(MDD), 2016 U.S. Dist. LEXIS 6674, at *17 (S.D. Cal. Jan. 19, 2016) (Hayes, J.)

(quoting *Susilo v. Wells Fargo Bank, N.A.*, No. CV 11-1814, 2012 WL 5896577, at *1 (C.D. Cal Nov. 19, 2012).

In California, requiring a plaintiff who has been declared a vexatious litigant to post a security bond may be appropriate to protect defendants from costs and attorney's fees they might incur. California Code of Civil Procedure section 391 requires a party to furnish security on a showing that (1) the party is a vexatious litigant and (2) there is no reasonable probability that she will prevail in the instant litigation.

The Ninth Circuit has expressly advised that cost bonds should be imposed with great care: "In requiring a security bond for defendants' costs, care must be taken not to deprive a plaintiff of access to the federal courts. To do so has serious constitutional implications. Our statutes and case law make it evident that we studiously avoid limitation of access to the courts because of a party's impecunious circumstance." *Simulnet E. Assocs.*, 37 F.3d 573, 575-76 (9th Cir. 1994).

Ultimately, whether to impose such bonds is with the Court's discretion, and review of such an order is for abuse of discretion. *Id.* at 574.

### 1. Plaintiff is Vexatious Under State Law

To establish the first prong of the motion for security, Defendants requests that the court find Plaintiff is a vexatious litigant under California Code of Civil Procedure § 391(b)(1). That subdivision defines, in relevant part, a vexatious litigant as one who "in the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations . . . that have been . . . finally determined adversely to the person."[3] Cal. Civ. Proc. Code § 391(b)(1)(i).

For these purposes, "litigation" is any civil action or proceeding, commenced, maintained or pending in any state or federal court. Cal. Civ. Proc. Code § 391(a). It

---

[3] An action qualifies as being within the "immediately preceding seven-year period" so long as it was filed, prosecuted, or maintained during that period. *Stolz v. Bank of Am.*, 15 Cal. App. 4th 217, 225 (1993).

includes an appeal or civil writ proceeding filed in an appellate court. *Garcia v. Lacey*, 180 Cal Rptr. 3d 45, 49 (Cal. Ct. App. 2014). A litigation is "determined adversely" to a plaintiff within the meaning of the vexatious litigant statute if the litigant does not win the action or proceeding he began, including cases that are voluntarily dismissed by a plaintiff. *Id.*; *see also Tokerud v. Capitolbank Sacramento*, 45 Cal. Rptr. 2d 345, 347 (Cal. Ct. App. 1995) (stating party who repeatedly files baseless actions only to dismiss them is no less vexatious than party who follows action through to completion).

In the pending motion, Defendants cite the following actions as adversely decided against Plaintiff:[4,5]

1. *Hammler v. Melendez, et al.*, No. 18-CV-588-EFB (E.D. Cal. 2018), dismissed June 1, 2018 pursuant to Plaintiff's request for voluntary dismissal.

2. *Hammler v. Director of CDCR*, No. 17-CV-97-NJV (N.D. Cal. 2017), dismissed April 27, 2017 after Plaintiff failed to file an amended complaint after the district court dismissed the complaint with leave to amend.

3. *Hammler v. Kirkland, et al.*, No. 16-CV-1944-CMK (E.D. Cal. 2016), dismissed June 7, 2017 pursuant to Plaintiff's request for voluntary dismissal.

---

[4] The Court should grant Defendants' motion for judicial notice of these court records and dispositions. *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012).

[5] This Court also notes that the following two cases in this District have been adjudicated against Plaintiff, but the Court is currently entertaining motions to reopen one case and another motion for reconsideration of a dismissal order:

- *Hammler v. Kernan, et al.*, No. 18-CV-1170-DMS-NLS, dismissed without leave to amend, December 10, 2018, for failure to state a claim and as frivolous. Plaintiff's motion for reconsideration is currently pending before the Court.

- *Hammler v. Aviles*, No. 18-CV-1185-AJB-WVG, dismissed May 11, 2018, after the Court adopted the undersigned's R&R in full and dismissed with leave to amend. The case was closed after Plaintiff failed to file an amended complaint, but Plaintiff's motion to reopen the case is pending before the Court.

4. *Hammler v. Pita, et al.*, No. 16-CV-1684-JGB-SP (C.D. Cal. 2016), dismissed July 21, 2016 pursuant to Plaintiff's request for voluntary dismissal.

5. *Hammler v. Macomber*, No. 15-CV-1913-AC (E.D. Cal. 2015), dismissed December 16, 2016 pursuant to Plaintiff's request for voluntary dismissal.

6. *Hammler v. Director of CDCR*, No. 15-CV-307-JAM-EFB (E.D. Cal. 2015), habeas petition dismissed without prejudice on November 15, 2017, allowing Plaintiff to file civil action under section 1983.

7. *Hammler v. Linkus*, No. 16K14541 (L.A. County Superior Court 2016), demurrer to complaint sustained without leave to amend on August 8, 2017.

8. *Hammler v. Godfrey, et al.*, No. 16K03901 (L.A. County Superior Court 2016), demurrer to complaint sustained without leave to amend on December 21, 2016.

9. *Hammler v. Davis, et al.*, No. JC58661 (Lassen County Superior Court 2015), demurrer to complaint sustained without leave to amend on May 23, 2015.

The four actions cited above which Plaintiff voluntarily dismissed qualify as actions adversely decided against him. *See Tokerud*, 45 Cal. Rptr. 2d at 347. Moreover, the remaining five actions dismissed on the merits also were adversely decided against him. Based on these cases, Defendants have shown that Plaintiff has had nine actions decided adversely against him during the relevant seven-year time period. Thus, Defendants have satisfied the vexatious litigant prong of the motion for security under section 391(b)(1).

**2. No Reasonable Probability of Success?**

In determining whether there is no reasonable probability of success, a court may determine whether a claim is foreclosed as a matter of law, but it may also weigh the evidence. *Golin v. Allenby*, 118 Cal. Rptr. 3d 762, 786 (Cal. Ct. App. 2010) (stating inability to prevail standard may be shown by weight of evidence or lack of merit); *see Moran v. Murtaugh Miller Meyer & Nelson, LLP*, 55 Cal. Rptr. 3d 112, 114 (Cal. Ct. App. 2007) (finding Cal. Civ. Proc. Code § 391.2 provides for weighing of evidence); *see Garcia*, 180 Cal. Rptr. 3d at 50 (stating decision on inability to prevail is based on evaluative judgment in which court is permitted to weigh evidence).

Unlike in other cases where defendants attempt to meet this prong by providing declarations, Defendants here have not proffered any evidence from which the Court can determine Plaintiff lacks a reasonable probability of success. *Cf. Crane v. Rodriguez*, No. 15CV208-TLN-KJN P, 2018 U.S. Dist. LEXIS 112832, at *10-11 (E.D. Cal. July 6, 2018) (defendants proffering seven declarations as evidence); *Quezada v. Cate*, No. 13CV960-AWI-MJS(PC), 2016 U.S. Dist. LEXIS 152213, at *12-14 (E.D. Cal. Nov. 1, 2016) (defendant proffered declaration on factual issues). Instead, Defendants refer the Court to their pending motion to dismiss, which they contend establishes the lack of any reasonable probability of success.

In a separate Report and Recommendation, this Court recommended dismissal of Plaintiff's excessive force claim against all defendants because Plaintiff's own allegations established that the use of force did not violate Plaintiff's Eighth Amendment rights. This Court recommended denying leave to amend this claim because the claim was foreclosed by Plaintiff's own allegations—and not because the claim was missing detail that could potentially save it upon amendment. As a result, Plaintiff has no reasonable probability of success on the excessive force claim.

However, with respect to the retaliation claim, this Court recommended dismissal with leave to amend. Accordingly, unless and until Plaintiff amends this claim and Defendants litigate its sufficiency, the Court cannot determine whether Plaintiff has a reasonable likelihood of success. Accordingly, Defendants have not satisfied the second prong of the section 391 analysis.

### 3. Exercise of the Court's Discretion

Regardless whether the Court is ultimately able to conclude that Plaintiff lacks a reasonable likelihood of success on the retaliation claim, the Court should exercise its discretion to not order that Plaintiff post security under Civil Local Rule 65.1.2(a).

Because the application of California's vexatious litigant statute is wholly permissive, *Hicks v. Arya*, No. 16CV2465-TLN-KJN-P, 2018 U.S. Dist. LEXIS 201759, at *11 (E.D. Cal. Nov. 27, 2018), the Court may use its discretion when determining

whether to require a plaintiff who has been determined to be a vexatious litigant to post security. *See Bradford v. Brooks*, 659 Fed. Appx. 935, 935 (9th Cir. Aug. 31, 2016); *see generally Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011 (9th Cir. 2010) ("District courts have broad discretion in interpreting and applying their local rules.") (internal citation omitted). Additionally, because Local Rule 65.1.2(a) is itself permissive,[6] the Court should exercise its discretion by declining to order security for the following reasons.

First, a grant of Defendant's security motion would require Plaintiff to pay the $15,525 prior to proceeding with his case or risk having his case dismissed for failure to comply with the Court's order to post security. *See* Cal. Civ. Proc. Code § 391.4 (providing for dismissal of litigation against defendant if security not provided as ordered). Given that Plaintiff is indigent, such an order would deny him access to the courts.[7] Under federal law, this Court must consider plaintiff's indigence. *See generally* 28 U.S.C. § 1915(a) (supporting avoidance of limitation to court access due to indigence); *Simulnet E. Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 575-76 (9th Cir. 1994) (stating care must be taken not to deprive a plaintiff of access to the federal courts when considering motion for security, as such deprivation has "serious constitutional implications"). This Court is to "avoid limitation of access to the courts because of a party's impecunious circumstance." *See Simulnet E. Assocs.*, 37 F.3d at 576.

Second, the consequence of not posting the security—dismissal—is the "ultimate sanction." *See United States v. King*, 200 F.3d 1207, 1214 (9th Cir. 1999) (stating dismissal is the "ultimate sanction" in dismissal of indictment case); *see also Thomas v. Gerber*

---

[6] This Rule is couched in wholly permissive language: "A judge *may* . . . require any party to furnish security for costs which may be awarded against such party in an amount and on such terms as are appropriate." (emphasis added).

[7] Although Plaintiff has likely received $4,000 from a recent settlement in a separate case, there is nothing before the Court that indicates he has received these funds. However, even if Defendants submit a copy of Plaintiff's prisoner account showing he has these funds available, he does not have sufficient funds to cover the security Defendants ask for.

*Prods.*, 703 F.2d 353, 356 (9th Cir. 1983) (same statement in context of deciding failure to comply with court order under Fed. R. Civ. P. 37(b)); *Schmidt v. Hermann*, 614 F.2d 1221, 1223-24 (9th Cir. 1980) (same statement made in context of deciding whether to dismiss for failure to prosecute under Fed. R. Civ. P. 41(b)). As a result, the Court abuses its discretion if it imposes a sanction of dismissal without first considering its impact as well as considering the adequacy of less drastic sanctions. *United States v. National Medical Enterprises, Inc.*, 792 F.2d 906, 912 (9th Cir. 1986). Although a requirement for security does not operate as a dismissal, it imposes a potential financial barrier that may have the same dispositive effect.

Finally, there is a strong preference in the law for resolution of cases on the merits rather than disposition on technicalities. *See O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (discussing preference in context of setting aside default); *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) ("Cases should be decided upon their merits whenever reasonably possible."); *Dayton Valley Investors, LLC v. Union Pac., RR Co.*, 664 F. Supp. 2d 1174, 1179 (D. Nev. 2009) (finding good cause for allowing a belated summary judgment motion where the Court would "eventually address" the issues raised in that motion); *Molfetta v. Time Ins. Co.*, No. 07CV1240-JCM-LRL, 2010 U.S. Dist. LEXIS 58775, at *1 (D. Nev. May 17, 2010) ("Due to the judicial preference of adjudicating issues on the merits, the court has exercised its discretion and considered Plaintiff's untimely opposition, and all arguments presented therein."). Here, it would be preferable for the Court to make a final determination on the viability of Plaintiff's retaliation claim if he chooses to amend the claim rather than dismiss the action based on his inability to post security.

Ultimately, it would not be appropriate to dismiss this action based on Plaintiff's financial resources rather than reaching the merits. For the reasons discussed above, the undersigned recommends that defendant's motion to require Plaintiff to post $15,525 in security be denied.

## C. Motion for Pre-Filing Order

Defendants argue that Plaintiff's litigation activities in state and federal courts justify an order from this Court declaring him a vexatious litigant who should be required to obtain leave of Court before making further filings. Because Plaintiff's lawsuits have been numerous, frivolous, and harassing, a pre-filing order is warranted.

### 1. Legal Standard

Federal courts can "regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). However, restricting access to the courts is a serious matter as the "right of access to the courts is a fundamental right protected by the Constitution." *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998). Thus, out of regard for the constitutional underpinnings of the right to court access, "pre-filing orders should rarely be filed," and only if courts comply with certain procedural and substantive requirements. *De Long*, 912 F.2d at 1147.

Accordingly, when district courts seek to impose pre-filing restrictions, they must (1) give litigants notice and "an opportunity to oppose the order before it [is] entered"; (2) compile an adequate record for appellate review, including "a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed," (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as "to closely fit the specific vice encountered." *Id.* at 1147-48.

### 2. Findings Regarding the Frivolous or Harassing Nature of Plaintiff's Litigation

Not only have Plaintiff's filings been numerous, they have been harassing and have been found frivolous. Accordingly, this Court recommends the issuance of a pretrial filing order for all future cases in this District.

#### a. Legal Background

Absent "explicit substantive findings as to the frivolous or harassing nature of the plaintiff's filings," a district court may not issue a pre-filing order. *O'Loughlin v. Doe*, 920

F.2d 614, 618 (9th Cir. 1990). To make substantive findings of frivolousness, the district court must look at "both the number and content of the filings as indicia" of the frivolousness of the litigant's claims. *In re Powell*, 851 F.2d 427, 431 (9th Cir. 1988); *see also Moy v United States*, 906 F.2d 467, 470 (9th Cir. 1990) (a pre-filing "injunction cannot issue merely upon a showing of litigiousness."). "'The plaintiff's claims must not only be numerous, but also be patently without merit.'" *Ringgold-Lockhart*, 761 F.3d at 1064 (quoting *Molski*, 500 F.3d at 1059). Alternatively, "the district court may make [a] finding that the litigant's filings 'show a pattern of harassment.'" *Id.* (quoting *De Long*, 912 F.2d at 1148). However, courts "must be careful not to conclude that particular types of actions filed repetitiously are harassing and must [i]nstead . . . discern whether the filing of several similar types of actions constitutes an intent to harass the defendant or the court." *Id.* (quoting *De Long*, 912 F.2d at 1148) (internal quotation marks omitted).

  **b.**  **Discussion**

As an initial matter, Defendants have shown that Plaintiff's lawsuits have been numerous. Since 2007, Plaintiff has filed 50 distinct cases against various prison officials—some of whom have been sued multiple times—in California state courts, every federal district Court in California, state appellate courts, and the Ninth Circuit Court of Appeals.[8] (Ex. 11 to RJN, Doc. No. 20-2 at 226-29 (identifying 50 cases by name, number, and court).) Of the 50 cases Plaintiff has filed, 36 have been in the last five years for an average of nearly nine cases per year. This level of litigation certainly qualifies as numerous. *See generally Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d

---

[8] The following is a breakdown of the number of cases Plaintiff filed each year since 2007:
  2007: 1   2011: 2   2015: 7
  2008: 0   2012: 2   2016: 11
  2009: 2   2013: 3   2017: 5
  2010: 4   2014: 7   2018: 6

(Ex. 11 to RJN, Doc. No. 20-2 at 226-29 (identifying 50 cases by name, number, and court).)

1515, 1523, 1526 (9th Cir. 1983) (noting 35 actions filed in 30 jurisdictions); *see also Favor v. Harper*, No. CV17-165-JGB(JEM), 2017 WL 132830, at *2 (C.D. Cal. Jan. 13, 2017) ("[Plaintiff] has filed at least 50 actions in this district since 2014, and he continues to file new habeas petitions and civil rights complaints on a regular basis."); *Calhoun v. San Diego Cnty.*, No. 12CV2596-AJB(JMA), 2012 WL 5878666, at *3 (S.D. Cal. Nov. 21, 2012) (highlighting 26 similar complaints). The question remains whether Plaintiff's lawsuits have been frivolous and harassing. To answer this question, this Court looks to other courts' findings.

On October 1, 2014, Plaintiff filed a lawsuit against a prison official in Lassen County Superior Court, alleging Davis had defamed him and violated his rights under the California constitution. (Doc. No. 20-2 at 212-15.) The basis for the defamation claim was the official's expressed belief that Plaintiff was charging other inmates to assist them with legal matters. (*Id.* at 13-14.) The state court sustained the demurrer, finding that the alleged statement by the official was not defamatory. (*Id.* at 220.) The Court further found the "right to pursue happiness" did could not "give rise to a cause of action for damages." (*Id.* at 221.) Because Plaintiff could not cure the defects in the complaint through amendment, the state court denied him leave to amend and dismissed the case. (*Id.* at 221.) A review of this case demonstrates it was wholly without merit when filed based on the official's innocuous statements.

On May 13, 2016, Plaintiff filed action in the Los Angeles Superior Court against several prison officials alleging they "maliciously and sadistically" deprived him of sleep. (Doc. No. 20-2 at 194.) Plaintiff alleged the defendants' "malicious, wanton, and sadistic" actions were intended to "interfere with [his] exercise of the right to sleep and to be free from cruel and unusual punishment." (*Id.* at 191.) However, the rambling, nonsensical complaint alleged little more than a verbal dispute with prison officials and failed to allege any plausible way that his sleep was deprived by the officials. On December 15, 2016, the state court sustained the defendants' demurrer and dismissed the case without leave to

amend. (*Id.* at 204.) This action was also meritless and frivolous based on its lack of actionable allegations and allegation that a non-existent "right to sleep" was violated.

On November 22, 2016, Plaintiff sued a prison official in the Los Angeles Superior Court, alleging defamation, slander, and libel. (Doc. No. 20-2 at 173.) He alleged the official placed an untrue disciplinary statement in Plaintiff's prisoner file, and that statement would eventually impact his chances of receiving parole in the future. The disciplinary statement simply noted that Plaintiff had brought unauthorized legal material into a classroom and that Plaintiff vociferously argued with prison staff about this issue. (*Id.* at 172.) On August 8, 2017, the state court sustained the defendants' demurrer on the basis that plaintiff had "failed to allege elements of any cause of action" and dismissed the action. (*Id.* at 183.) Again, this action lacked any merit and was frivolous.

Most recently, on December 10, 2018, the Honorable Dana M. Sabraw dismissed Plaintiff's first amended complaint for failure to state a claim upon which section 1983 relief could be granted. (*Hammler v. Kernan et al.*, S.D. Cal. No. 18-CV-1170-DMS(NLS), Doc. No. 11 at 6.) Judge Sabraw further denied Plaintiff leave to amend, found the case was frivolous, and certified that an appeal would not be taken in good faith. (*Id.*) Plaintiff's pursuit of this recent action was particularly egregious for several reasons.

First, Judge Sabraw found Plaintiff's claims were duplicative of claims he was actively pursuing in the Eastern District of California. (*Id.* at 3 (citing *Hammler v. Director of CDCR et al.*, E.D. Cal. No. 17-CV-1949-MCE-DB).) Plaintiff had alleged that he had "entered into a bilateral contract with the [CDCR] in which the terms of the agreement were that Plaintiff was agreeing to be housed [in] a sensitive needs yard." (*Id.*) Plaintiff alleged that this agreement was in exchange for "being provided an environment where he can live and program free of gangs and their politics." (*Id.*) Plaintiff claimed that the Director of the CDCR "in concert with co-defendants Daniel Paramo and P. Cortez have breach the entered into contract via refusing to up-hold their end." (*Id.*) Moreover, a breach of contract claim was also identical to claims in the Eastern District case. (*Id.* at 5.)

Judge Sabraw dismissed these claims, as they were identical to those in another pending action.

Second, Judge Sabraw dismissed Plaintiff's retaliation claim because he had alleged facts that showed he was properly issued rules violations. Judge Sabraw found: "[H]e fails to allege that any Defendant issued a rules violation report because he sought to exercise his constitutional rights, instead he makes clear that he was issued disciplinary reports because he refused to accept the housing he was assigned." (*Id.* at 4.) Moreover, not only had Plaintiff failed to allege that the defendants' actions had any chilling effect, he had actually admitted that their actions did not have a chilling effect. (*Id.* at 5.) Although Plaintiff filed a motion for reconsideration, which is currently pending before Judge Sabraw, this case demonstrates the frivolous and harassing nature of Plaintiff's litigious conduct, especially in bringing duplicate claims in another district court. As Judge Sabraw found, this action was also frivolous.

Finally, Plaintiff's allegations against Defendants in the instant case further demonstrate Plaintiff's pattern of harassing litigation. As explained in detail in the recently-filed Report and Recommendation on Defendants' motion to dismiss, Defendants used a trivial level of force in response to Plaintiff's resistance and non-compliance with their attempts to simply remove handcuffs from his wrists. Plaintiff's own allegations here plainly demonstrate that he unnecessarily precipitated this confrontation with Officers Alvarez and Deis. Thus, much like the retaliation claim in the case before Judge Sabraw, Plaintiff's own allegations establish not only that he is not entitled to relief, but also show that that the defendants did not act in violation of the Constitution.

Additionally, the FAC here contains insight into Plaintiff's litigious mental state. A witness statement Plaintiff submitted with the FAC relates to a prior incident when Plaintiff refused to comply with orders to produce his hands for handcuffing and again provoked a confrontation with prison staff. This witness statement demonstrates that Plaintiff's mental state while actively in the middle of this manufactured confrontation was with an eye towards a future lawsuit: "[The lieutenant heard] Hammler yell after him 'all 'ya'll have to

15

18-CV-326-AJB(WVG)

do is bring the camera and I'll come out, *other than that your [sic] gonna get to know me too, in bog bold printed letters on the law suit* [sic].'" (Inmate Anderson Decl. Doc. No. 1 at 70 (emphasis added).) Indeed, Plaintiff filed that lawsuit, which is now pending in this District. *Hammler v. Hough, et al.*, No. 18-CV-1319-LAB(BLM).[9]

### 3. Conclusion

Based on the foregoing, Defendants have sufficiently demonstrated that Plaintiff's lawsuits have been numerous, frivolous, and have shown a pattern of harassment. Accordingly, the Court should GRANT Defendants' motion for an order declaring Plaintiff a vexatious litigant.

## RECOMMENDATIONS & ORDERS

Based on the foregoing, this Court RECOMMENDS that Defendants' motion be GRANTED-IN-PART and DENIED-IN-PART as follows:

1. Defendants' request for revocation of Plaintiff's IFP status and for dismissal be DENIED;

2. Defendants' request to require Plaintiff to post security under Local Civil Rule 65.1.2(a) be DENIED; and

3. Defendants' request for an order declaring Plaintiff a vexatious litigant subject to a prefiling order be GRANTED.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

Additionally, **IT IS ORDERED:**

1. That **no later than February 28, 2019**, any party to this action may file written objection with the Court and serve a copy on all parties. Given the extensive

---

[9] This case remains in screening after Plaintiff filed an amended complaint in response to the Court's dismissal of his original complaint.

extensions the Court has granted Plaintiff and the delay that has caused, the parties should not expect that any further extensions will be granted.

2. **The objection shall be no more than 10 pages in length** and shall be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the specific time may waive to raise those objections on the appeal. **No reply briefs in response to the Objections will be accepted.**

3. Plaintiff need not make any copies of his Objections and should mail the original of his Objections directly to the Court.

4. Plaintiff is also excused from serving a copy upon Defendants. Service upon Defendants shall be deemed completed upon transmission of the Notice of Electronic Filing issued by the CM/ECF system.

5. The Attorney General's Office shall request that a litigation coordinator be assigned to Plaintiff for the timely filing of any Objections.

6. The Attorney General's Office shall cause personal delivery of a hard copy of this R&R by the litigation coordinator within 1 business day of filing.

7. On **February 21, 2019**, the Attorney General's Office shall file a status report regarding its compliance with these mandates.

**IT IS SO ORDERED.**

DATED: February 13, 2019

Hon. William V. Gallo
United States Magistrate Judge