1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

11   ALLEN HAMMLER,                          Case No.:  3:18-cv-0326-AJB-WVG
     CDCR #F-73072,
12                                           **ORDER GRANTING DEFENDANT'S**
                              Plaintiff,     **MOTION TO DISMISS PURSUANT**
13                                           **TO Fed. R. Civ. P. 12(b)(6)**
     vs.
14                                           **[ECF No. 70]**
     J. ALVAREZ; J. DEIS;
15   BARRIENTOS; HOUGH,
16
                              Defendants.
17
18
19

20          Plaintiff, Allen Hammler, currently incarcerated at California State Prison located

21   in Corcoran, California, and proceeding pro se, filed this civil rights action ("Compl.")

22   pursuant to 42 U.S.C. § 1983, on February 9, 2018 (ECF No. 1).

23   **I.      Procedural History**

24          Plaintiff initially filed this action pursuant to 42 U.S.C. § 1983 on February 9,

25   2018. (*See* ECF No. 1.)  Plaintiff later filed a Motion to Proceed *In Forma Pauperis*

26   ("IFP") on February 26, 2018.  (*See* ECF No. 3.)  On April 25, 2018, the Court

27   GRANTED Plaintiff's Motion to Proceed IFP and directed the United States Marshals

28   Service to serve Plaintiff's Complaint.  (*See* ECF No. 5.)

On May 14, 2018, Plaintiff filed a "Motion to Withdraw Count Three and for Ruling on Count Two," followed by a "Motion for Ruling on Count 2." (ECF Nos. 8, 10.) Count three of Plaintiff's Complaint relates to his claims that Defendants violated his Fourteenth Amendment right to due process through use of libel and slander. (*See* Compl., ECF No. 1 at 15.)

On July 9, 2018, the Court GRANTED Plaintiff's granted Plaintiff's motion to withdraw count three of Plaintiff's Complaint. (*See* ECF No. 15 at 3.) However, the Court DENIED Plaintiff's motion for an "advisory opinion" relating to count two of his Complaint. (*See id*.) The Court then construed Plaintiff's Complaint as his First Amended Complaint ("FAC"). (*See id*.)

On September 9, 2018, Defendants filed a "Motion to Dismiss to First Amended Complaint" pursuant to Fed.R.Civ.P. 12(b)(6). (ECF No. 19.) In addition, Defendants filed a "Motion for Order to Declare Plaintiff Vexatious, Requiring Posting of Security, and Issuance of Pre-Filing Order." (ECF No. 20.)

On July 24, 2019, the Court adopted Magistrate Judge Gallo's Report and Recommendation to DISMISS Plaintiff's Eighth Amendment excessive force claims with prejudice and without leave to amend, to GRANT qualified immunity to Defendants Alvarez and Deis as to Plaintiff's Eighth Amendment claims, and to GRANT dismissal of Plaintiff's First Amendment retaliation claims with leave to amend. (*See* ECF No. 61 at 9-10.)

On August 13, 2019, the Court adopted Judge Gallo's Report and Recommendation to DENY Defendants' Motion requiring posting of security, GRANT Defendants' request for judicial notice and GRANT Defendants' Motion to impose pre-filing restrictions on Plaintiff as a vexatious litigant. (*See* ECF No. 53 at 7.)

On August 5, 2019, Plaintiff filed his Second Amended Complaint ("SAC"). (*See* ECF No. 62.) Plaintiff also filed a Notice of Appeal to the Ninth Circuit Court of Appeals that was later dismissed for lack of jurisdiction. (*See* ECF Nos. 66, 81-82.)

On October 4, 2019, Defendants Alvarez, Barrientos, Deis, and Hough filed a Motion to Dismiss Plaintiff's SAC for failing to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (*See* ECF No. 70.)  Plaintiff filed an Opposition to which Defendants filed a Reply.  (*See* ECF Nos. 74, 75.)  Plaintiff later sought leave to file a Sur-Reply which was granted, and the Sur-Reply was filed on January 15, 2020.  (*See* ECF Nos. 78-80.)

The Court has considered Plaintiff's pleadings, as well as Defendants' Motion as submitted, and has determined no oral argument is necessary pursuant to S.D. Cal. CivLR 7.1. For the reasons explained, the Court GRANTS Defendants' Motion to Dismiss (ECF No. 70) pursuant to Fed. R. Civ. P. 12(b)(6).

## II.   Motion to Dismiss

### A.   Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (on motion to dismiss court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted).

Nevertheless, claims asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519-20 (1972). Thus, courts "continue to construe pro se filings liberally when evaluating them under *Iqbal*." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (noting

that courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.")).

## III.   Discussion

### A.   Defendants' Arguments

Defendants seek dismissal of Plaintiff's SAC on the grounds: (1) Plaintiff failed to comply with the Court's July 24, 2019 Order; (2) Plaintiff has failed to state a First Amendment retaliation claim against Defendants Alvarez, Deis, and Hough; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff failed to exhaust his administrative remedies.  *See* ECF No. 70 ("Mem. of P&As in Supp. of Mot. to Dismiss") at 2.

### B.   Plaintiff's Allegations[1]

On November 15, 2016, Plaintiff claims he was "assaulted" by Correctional Officers Hernandez and Figueroa.[2]  (SAC at 3.)  On January 28, 2016, Plaintiff was "collected from his assigned cell" by Defendants Sergeant Alvarez and Correctional Officer Deis in order to be interviewed regarding the "assault."  (*Id.*)

Plaintiff was interviewed by Lieutenant Piket[3] and "escorted back to his cell" by Alvarez and Deis.  (*Id.*)  When Plaintiff returned to his cell, he "noted that a number of his legal books were jumbled into a pile on the floor" and "some books were torn in half" while "others were visibly damaged."  (*Id.*)

As Alvarez was removing Plaintiff's "leg irons," Plaintiff asked Alvarez "why his cell had been searched" while he was being "interview[ed] about a staff complaint."  (*Id.*

---

[1] Page numbers for all documents filed in the Court's Case Management/Electronic Case File ("CM/ECF") will refer to the pagination generated by CM/ECF as indicated on the top right-hand corner of each chronologically numbered docket entry.

[2] Hernandez and Figueroa are not named Defendants.
[3] Piket is not a named Defendant.

at 4.)  Plaintiff told Alvarez "that's retaliation" to which Alvarez purportedly responded "no, it's not" and told Plaintiff that they were "looking for contraband." (*Id.*)  Plaintiff told Alvarez that "those are all legal books and look how you've torn them up." (*Id.*)  Plaintiff alleges Alvarez responded, "you can get some new ones with all that money you're gonna get from suing us." (*Id.*)  Plaintiff claims he told Alvarez "go get the Lieutenant" to which Alvarez responded, "what for, he already knows we searched your cell." (*Id.*)

Plaintiff told Alvarez that "[Lieutenant Piket] don't know y'all tore up my legal books and I ain't giving up the cuffs until he comes over here." (*Id.*)  Plaintiff claims Alvarez then "grabbed hold of the chain of which [Deis] had already been holding." (*Id.* at 5.)  Alvarez told Plaintiff "I'm giving you a direct order to put your hands out of the food port." (*Id.*)  Plaintiff "refused" and told Alvarez again to "go get the Lieutenant." (*Id.*)

The cell door was closed, and Plaintiff said to Alvarez "I ain't pulling on the chain or actively resisting, so you can't pull the chain either." (*Id.*)  Alvarez responded, "no one is gonna pull the chain, so don't resist." (*Id.*)  Plaintiff told Alvarez that "I'm not putting my hands out, so call the Lieutenant." (*Id.*)

Plaintiff claims Alvarez "began slowly pulling the chain anyway causing Plaintiff to have to turn his back to the door." (*Id.*)  Plaintiff said to Alvarez "stop pulling the fuckin' chain, I'm not resisting and won't resist, follow procedure." (*Id.*)  While Alvarez was still pulling the chain, with Deis "aiding," Alvarez "simultaneously reached into the food port and taking hold of the link to the handcuffs he began to forcefully pull Plaintiff's hands into and through the food port." (*Id.* at 6.)

Plaintiff claims he began yelling "I'm no threat to anyone, I'm not resisting, stop pulling the chain" repeatedly to Alvarez.  (*Id.*) Plaintiff alleges Alvarez began yelling "stop resisting, stop resisting" while continuing to "yank the chain." (*Id.*)  Plaintiff claims that his left hand was "caught inside of the door causing him to scream out in pain" as Alvarez and Deis continued to "pull the chain." (*Id.*)  Plaintiff claims he tried to

"unhitch the cuff with his right hand" while Alvarez reached into the door and "attempted to unlock the cuffs." (*Id.*) Plaintiff claims that his left hand "got in Alvarez's way" and Alvarez "jabbed it with the key" causing Plaintiff to have cuts on his hand. (*Id.* at 6-7.)

Alvarez "managed to use the key to unlock the cuff of Plaintiff's right hand." (*Id.* at 7.) Plaintiff "able to unhitch his left hand from the food port." (*Id.*) Plaintiff's left hand was "forcefully pulled through and out of the food port where Deis grabbed hold of it and violently twisted it while Alvarez unlocked the cuff." (*Id.*) "Both hands now free of the cuffs, Deis released the left, Plaintiff pulled it in, and the food port was slammed shut by Alvarez." (*Id.*)

Plaintiff alleges "moments later" he "began to have chest pains and was taken to CTC/Medical to be evaluated." (*Id.*) When Plaintiff returned to "ASU" he was met by Lieutenant Garcia[4] "who came out from the office clapping loudly." (*Id.*) Plaintiff claims Garcia told him "thanks for the overtime." (*Id.* at 8.) Plaintiff responded to Garcia "no court will be dumb enough to believe y'all not setting all this up." (*Id.*) Plaintiff also told Garcia "I'm gonna sue the hell out of y'all." (*Id.*) Plaintiff claims Garcia said, "big deal, that ain't no surprise, you go ahead and sue me, but look that's your shit on the tier not mine." (*Id.*)

Garcia then left and Correctional Officer Barrientos "stayed behind to issue Plaintiff a receipt for the confiscated legal books and a cell search slip." (*Id.* at 8-9.) Plaintiff claims that Alvarez and Deis' actions with regard to the food port incident were in "violation" of "procedures/prerequisites." (*Id.* at 9.) Plaintiff claims that as a result of Alvarez and Deis' actions he "suffered injuries to the hands, consisting of a stab wound, cuts, swelling, bruising, [and] nerve damage." (*Id.* at 10.)

Plaintiff alleges these actions were taken in "retaliation for Plaintiff's protected conduct and participating in [the] interview relevant to the complaint filed." (*Id.* at 11.)

---

[4] Lieutenant Garcia is not a named Defendant.

Plaintiff "alleges that the Defendants acted in concert to reproach him for exercising his right to free speech, for speaking his peace during the interview." (*Id.*)

"In furtherance of the conspiracy to deprive Plaintiff of rights secured by and through the Constitution," Plaintiff claims Deis "witnessed [Sergeant] Cabales[5] admonish Plaintiff of his right to remain silent under Miranda." (*Id.* at 13.) Plaintiff claims all the named Defendants engaged in a "conspiracy" which caused him to "seek further psychological counseling" that "forcefully placed [him] into mental hospital as a direct and proximate result." (*Id.*)

Plaintiff alleges that "in the course of the alleged conspiracy," he was issued a rules violation report ("RVR"). (*Id.* at 14.) Plaintiff claims Alvarez and Deis "falsified facts to retaliate against Plaintiff for all the above alleged" and in an "attempt to cover up their illegal actions and use of unnecessary and excessive force." (*Id.* at 14-15.)

Plaintiff alleges that Barrientos and Hough entered his cell "for the sole purpose of retaliating against him for taking part in the interview." (*Id.* at 16.) Plaintiff claims Barrientos and Hough "willing took on key roles in the conspiracy alleged, facilitating each and every adverse action that followed." (*Id.*) Plaintiff allege they "destroyed his legal books" claiming that they took Plaintiff's legal books because "Plaintiff had a number in excess" that was allowed. (*Id.*)

Plaintiff seeks $1,000,000 in compensatory damages, $1,000,000 in punitive damages, and "costs of litigation." (*Id.* at 28.)

### C.    Eighth Amendment claims

First, Defendants move to dismiss Plaintiff's Eighth Amendment claim on the ground that Plaintiff "did not comply with this Court's Order on amendment." Defs.' Mem. of P&As in Supp. of Mot. to Dismiss at 16-17.  In Plaintiff's FAC, he alleged that Defendants violated his Eighth Amendment right to be free from cruel and unusual

---

[5] Sergeant Cabalas is not a named Defendant.

punishment by using excessive force against him.  *See* FAC at 3-11.  This Court found that Plaintiff failed to sufficiently allege facts to support any element of an Eighth Amendment excessive force claim.  *See* July 24, 2019 Order at 8.  Moreover, the Court found that even if Plaintiff were able to allege facts sufficient to state a claim, Defendants were entitled to qualified immunity as to Plaintiff's Eighth Amendment claim.  *See id.* at 9.  Thus, Plaintiff's Eighth Amendment excessive force claim was dismissed with prejudice and without leave to amend.  *See id.* at 10.

Despite the Court's Order, Plaintiff's SAC is nearly identical to his FAC and he does appear to attempt to re-allege his Eighth Amendment excessive force claim.  In fact, Plaintiff's SAC is merely a photocopy of his FAC with the exception that Plaintiff has drawn a line through the cause of action previously labeled as an Eighth Amendment excessive force claim and merely adds an additional paragraph to this cause of action which contains no factual allegations.  *See* SAC at 3, 11.

Plaintiff argues in his Opposition that the "Eighth Amendment claims that are alleged in the SAC do not go to the excessive force claims that were dismissed with prejudice."  ECF No. 74 ("Opp'n") at 4.  Instead, Plaintiff maintains that these "claims before the Court now go to deliberate indifference to Plaintiff's constitutional rights."  *Id.*  Plaintiff also claims that he has "found a viable legal theory by which to hold the Defendants to answer via the state claims for assault where the excessive force claim would not be allowed."  *Id.* at 7.

While not entirely clear, it appears that Plaintiff is using the same set of facts that previously formed the basis of his Eighth Amendment excessive force claim and now intends to use those claims to support an Eighth Amendment failure to protect claim.  To find a violation of the "Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind'."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted.).  A culpable state of mind in prison conditions cases requires a finding that prison officials were deliberately indifferent to an inmate's "health and safety."  (*Id.*)

However, before determining whether a prison official was "deliberately indifferent," the constitutional deprivation alleged must be objectively, 'sufficiently serious'." (*Id.*) (citations omitted).  The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).  In order to state an Eighth Amendment failure to protect claim, Plaintiff must allege facts sufficient to show that the risk he faced was objectively "sufficiently serious" and that the conditions under which he was confined posed a "substantial risk of serious harm" to him.  *Farmer*, 511 U.S. at 834.

Here, Plaintiff's own allegations indicate that he put himself at risk.  When he was sent back to his cell, he refused Alvarez's orders to put his hands out of the "food-port" so that his handcuffs could be removed.  (FAC at 4.)  Alvarez, along with Deis, reached into the food port and took hold of Plaintiff's handcuffs.  *See id.* at 6.  As a result, Plaintiff's left hand became caught in the door of the food-port.  *Id.* at 6.  As Alvarez and Deis worked to remove Plaintiff's handcuffs, Plaintiff claims that his left hand got in Alvarez's way.  *See id.*  Plaintiff alleges that Alvarez twice "jabbed" at Plaintiff's left hand and cut his hand. *See id.* at 6-7.  Ultimately, Alvarez was able to unlock Plaintiff's handcuff.  *See id.* at 7.  These allegations by Plaintiff demonstrate that he put himself in harm's way and that his failure to comply with the orders to allow Defendants to remove his handcuffs caused his injuries.  Thus, the Court finds that the facts do not rise to the level to plausibly demonstrate that Plaintiff faced a "substantial risk of harm to his health or safety." *Farmer,* 511 U.S at 834.

Moreover, even if Plaintiff were able to allege facts sufficient to show that either Alvarez or Deis were to have "actually kn[own] of a substantial risk to [Plaintiff's] health or safety[,] they may be found free from liability if they responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.  Here, Plaintiff alleges that when his left hand became caught, both Alvarez and Deis worked to free him of his hand cuffs to prevent further injury which is a reasonable response to the events set in motion by Plaintiff's own actions.  Based on these allegations, the Court finds that

1    Plaintiff has failed to allege sufficient facts to establish that Alvarez or Deis had

2    subjective knowledge and conscious disregard of a substantial risk of harm to his health

3    or safety.  *Id.* at 837.  Therefore, Defendants' Motion to Dismiss Plaintiff's Eighth

4    Amendment claims is GRANTED.

5        **C.    Retaliation Claims**

6        Defendants argue that Plaintiff's retaliation claims are insufficient to state a

7    plausible claim for relief.  *See* Defs.' Mem. of P&As in Supp. of Mot. to Dismiss at 10-

8    14. Defendants argue Plaintiff's retaliation claims are insufficient to state a plausible

9    claim for relief on the grounds that: (1) Plaintiff has failed to allege any facts to establish

10   a causal connection between the disciplinary report filed by Deis and grievances filed by

11   Plaintiff; (2) Plaintiff has alleged no facts to support a showing that either Deis or

12   Alvarez knew that Plaintiff had filed a grievance against them; and (3) Plaintiff has failed

13   to demonstrate any causal connection between the cell search by Barrientos and Hough's

14   and Plaintiff filing an inmate grievance.  *Id.* at 18-24.

15       In his Opposition, however, Plaintiff claims that his First Amendment retaliation

16   claim is not "predicated on issuance of the RVR" issued by Deis.  Opp'n at 7.  Instead,

17   Plaintiff claims his retaliation claims are based on his allegations that the cell search was

18   conducted in retaliation for Plaintiff "exercising [his] right to speak in the [Piket]

19   interview."  *Id.*

20       "Within the prison context, a viable claim of First Amendment retaliation entails

21   five basic elements: (1) An assertion that a state actor took some adverse action against

22   an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

23   chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

24   reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559,

25   567–68 (9th Cir. 2005) (citations omitted).

26       As the Court noted with regard to Plaintiff's Eighth Amendment claims, most of

27   his allegations relating to the purported incident of retaliation contained in his FAC are a

28   photocopy of his original Complaint. These identical factual allegations were already

found by the Court to be deficient to state a retaliation claim.  Plaintiff does add an allegation that Barrientos and Hough entered "his cell for the sole purpose of retaliating against him for taking part in the interview."  (FAC at 16.)

Adverse action taken against a prisoner "need not be an independent constitutional violation." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (internal citations omitted). A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred. *Id.* The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities. *Rhodes*, 408 F.3d at 567–68. The prisoner must allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." *Watison*, 668 F.3d at 1114. Finally, a prisoner successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." *Id.*

Here, once again, the Court finds that Plaintiff alleges no facts to support a causal connection between the search of his cell by Hough and Barrientos and his participation in the interview with Lieutenant Piket.  The Court previously found that Plaintiff's Complaint was devoid of any factual allegations to suggest that "Hough or Barrientos knew that an interview was taking place, the purpose of the interview, or even where Plaintiff was at the time."  *See* Report and Recommendation dated February 4, 2019, ECF No. 53 at 21; Order Adopting Report and Recommendation dated July 24, 2019, ECF No. 61.  Plaintiff was granted leave to amend his pleading specifically to plead allegations to support a causal connection between his interview and the search conducted by Hough and Barrientos.  *See id.*  Plaintiff must allege a causal connection between the adverse action and the protected conduct.  *Watison,* 668 F.3d at 1114.  Plaintiff simply re-alleges the facts that the Court has already found deficient and adds no additional facts to support this claim.  Instead, as noted above, he only adds the conclusory allegations that

Barrientos and Hough entered "his cell for the sole purpose of retaliating against him for taking part in the interview." (FAC at 16.)

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). Plaintiff's statement is a conclusory one and does not allege any specific facts to show that either Hough or Barrientos were aware that Plaintiff was conducting an interview. There is simply no causal connection alleged by Plaintiff between the exercise of his First Amendment rights and the cell search. Therefore, the Court finds that Plaintiff has failed to allege factual allegations to support a finding that either Hough or Barrientos conducted the cell search in retaliation for Plaintiff exercising his First Amendment rights. Accordingly, Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation claims is GRANTED.

### D.     Fourteenth Amendment claims

Defendants also seek dismissal of Plaintiff's Fourteenth Amendment due process claims. *See* Defs.' Mem. of P&As in Supp. of Mot. to Dismiss at 16-18. Plaintiff's SAC is unclear as to what forms the basis of his Fourteenth Amendment. However, Plaintiff does allege that Defendants violated his "14th Amendment rights substantively." SAC at 15. Plaintiff claims that he has a "liberty interest in avoiding having Defendants take any physical actions against him outside the processes." *Id.*

To the extent that Plaintiff seeks to bring a Fourteenth Amendment substantive due process claim based on the same set of facts that he purportedly brings his Eighth Amendment claims, his Fourteenth Amendment claims must be dismissed. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide of analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "[I]f a constitutional claim is covered by a specific constitutional

provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997).  Here, Plaintiff's Fourteenth Amendment allegations are based on the same set of facts he has brought his claims of violation of the Eighth Amendment's prohibition of cruel and unusual punishment.

Therefore, Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claim is GRANTED.

### E.    Conspiracy claims

Defendants' seek dismissal of Plaintiff's conspiracy claims.  *See* Defs.' Mem. of P&As in Supp. of Mot. to Dismiss at 19-20.

A conspiracy claim under section 1983 must contain sufficient "factual matter," and not simply offer "naked" and conclusory assertions, *Iqbal*, 556 U.S. at 678, to plausibly show: "(1) the existence of an express or implied agreement among the defendant officers to deprive [the plaintiff] of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010) (internal quotation marks omitted); *Klein v. Williams*, 714 F. Appx 631, 636 (9th Cir. 2017), *cert. denied*, 139 S. Ct. 76 (2018); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001).

Here, the allegations of conspiracy in Plaintiff's SAC are "unadorned" and disjointed at best.  Thus, the Court finds that Plaintiff's SAC fails to provide any factual enhancement to show that any of the named Defendants entered into an express or implied agreement to violate his constitutional rights. *See Iqbal*, 556 U.S. at 678; *Avalos*, 596 F.3d at 592; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level....") (citations omitted).   Without any supporting facts, Plaintiff claims there was a conspiracy between Barrientos and Hough and all the other named Defendants to destroy his property.  *See* SAC at 16.  He claims they had a

"meeting of the minds" to "entrap" him. *Id.* He further claims that Defendants had a "conspirator[ial] meeting of the minds to retaliate against him." *Id.* at 17.

A plaintiff must set forth "the grounds of his entitlement to relief [,]" which "requires more than labels and conclusions," and "naked assertions" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp.*, 550 U.S. at 555, 557).

A conspiracy claim under § 1983 requires factual allegations supporting "an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin*, 312 F.3d at 441 (quoting *United Steelworkers of Am.*, 865 F.2d at 1541).

Plaintiff does not allege coherent facts from which the Court could "draw a reasonable inference" of a "meeting of the minds" to violate his constitutional rights. *See Iqbal*, 556 U.S. at 678; *Franklin*, 312 F.3d at 441. A conspiracy does not exist simply because Defendants all allegedly took the same action. *See Myers v. City of Hermosa Beach*, 299 Fed. Appx. 744, 747 (9th Cir. 2008) ("Before a conspiracy claim can be sustained, a plaintiff must show a meeting of the minds by the so-called conspirators.).

For all these reasons, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's conspiracy claims for failing to state a claim upon which relief may be granted.

## F.   Qualified Immunity

Defendants argue that they are entitled to qualified immunity.  Because the Court Plaintiff has failed to allege facts to support any claim of constitutional violations, it need not reach any issues regarding qualified immunity.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[The better approach to

resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

## IV.   Defendants' Motion to Dismiss for Failing to Exhaust

Defendants also seek dismissal of some of Plaintiff's claims on the ground that Plaintiff failed to properly exhaust his administrative remedies because his grievance "did not describe his retaliation and conspiracy claims brought in this action."  *See* Defs.' Mem. of P&As in Supp. of Mot. to Dismiss at 31.

### A.   Legal Standards for Exhausting Administrative Remedies

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (quoting 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA[.]" *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted). The PLRA also requires that prisoners, when grieving their appeal, adhere to CDCR's "critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes*, 621 F.3d at 1004.

Therefore, regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as that process remains available to him. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies ... available,' and the prisoner need not further pursue the grievance." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (original emphasis) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need

exhaust only such administrative remedies as are 'available.'" *Ross*, 136 S. Ct. at 1862; *see also Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable.").

B.   <u>Motion to Dismiss</u>

The Ninth Circuit has held that "in those rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim." *Albino v. Baca,* 747 F.3d 1162, 1169 (9th Cir. 2014.)  Defendants point to the grievance Plaintiff previously attached to his Complaint in support of their argument Plaintiff failed to exhaust his conspiracy and retaliation claims.  *See* Defs.' Mem. of P&As in Supp. of Mot. to Dismiss at 31 (citing ECF No. 1, Ex. F-3, Inmate/Parolee Appeal CDCR 602, Log No. RJD-17-00105 and SVSP-16-07495.)

Because the failure to exhaust is an affirmative defense, Defendants bear the burden of raising it and proving its absence. *Jones*, 549 U.S. at 216; *Albino*, 747 F.3d at 1169 (noting that Defendant must "present probative evidence—in the words of *Jones*, to 'plead and prove'–that the prisoner has failed to exhaust available administrative remedies under § 1997e(a)").

In his Opposition, Plaintiff claims that his "descriptions" in the grievance he previously attached to his Complaint were "apt to give proper notice and that is the truth that must be accepted."  (Opp'n at 8.)   At the heading of this grievance where there is a space for Plaintiff to "[s]tate briefly the subject of your appeal," Plaintiff lists "enforcement, entrapment, excessive force, slander/libel, false report(s)." ECF No. 1 at 68.  In the body of the grievance, Plaintiff states that while he was being interviewed in the Lieutenant's office regarding a "staff complaint," Hough and Barrientos were searching his cell and threw his "legal books out onto the tier." *Id.* at 68-69.  Plaintiff also describes the same claims regarding excessive force which are found in his SAC. *See id.* at 69.

While Plaintiff's grievance did include allegations of excessive force, it did not include sufficient detail to put any Defendants "on notice" of Plaintiff's conspiracy or retaliation claims against them.  It also did not provide prison officials with a fair opportunity to address or resolve his retaliation or conspiracy claims against Defendants prior to bring this action to court.  *Rhodes*, 621 F.2d at 1005 ("[A] prisoner must exhaust his administrative remedies *for the claims contained within his comp*laint before that complaint is tendered to the district court.") (emphasis added).

Here, the Court finds that Plaintiff's grievance would not have alerted Defendants as to the nature of the wrong for which Plaintiff now seeks redress.  *See Sapp v. Kimbrell*, 623 F.3d 813, 922-23 (9th Cir. 2010).  Therefore, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's conspiracy and retaliation claims for failing to exhaust his administrative remedies.

## V.     State Law claims

The only remaining claims in Plaintiff's SAC are his claims brought under California state law. "In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, "once judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).

"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— (3) the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). For all the reasons stated above, the Court finds that Plaintiff fails to state a plausible claim for relief pursuant to 42 U.S.C. § 1983. Therefore, in the absence of any viable federal claim upon

which § 1983 relief may be granted, the Court exercises its discretion and DISMISSES all Plaintiff's supplemental state law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3). *Id.*

## VI.   Conclusion and Order

Accordingly, the Court:

(1)   **GRANTS** Defendants' Motion to Dismiss Plaintiff's SAC pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 70) and **DENIES** leave to amend as futile;

(2)   **GRANTS** Defendants' Motion to Dismiss Plaintiff's conspiracy and retaliation for failing to exhaust his administrative remedies;

(3)   **DISMISSES** all Plaintiff's supplemental state law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

**IT IS SO ORDERED**.

Dated:  June 15, 2020

Hon. Anthony J. Battaglia
United States District Judge